Below is the Order of the Court.

*Mary Jo Heston*
_____
**Mary Jo Heston
U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

_____

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA**

In re:

RODOLFO A. MONTIEL and
SARA A. MONTIEL,

                  Debtors.

Case No. 14-44784

**MEMORANDUM AND ORDER DETERMINING VALUATION DATE FOR PURPOSES OF EVIDENTIARY HEARING ON MOTION TO AVOID LIEN**

       This matter came before the Court on June 13, 2017, pursuant to the motion to avoid lien of Guaranty Bank. Debtors Rodolfo and Sara Montiel ("Debtors") filed the motion to strip the creditor's lien on January 28, 2017, and creditor Guaranty Bank responded. The Court set an evidentiary hearing on this matter for July 12, 2017, and requested briefing from the parties on the legal issue of the appropriate date to use to value property in connection with the lien strip motion. The Debtors argue that the appropriate date is the petition date and Guaranty Bank argues that the appropriate date is at or around the hearing on the motion (i.e., current value). Based on the pleadings and arguments presented, the Court determines the date of valuation for purposes of the lien stripping motion in this case is the petition date for the reasons set forth below.

ORDER DETERMINING
VALUATION DATE - 1

# BACKGROUND

The Debtors filed their Chapter 13 bankruptcy case on August 30, 2014. The Court entered an order confirming their Chapter 13 plan dated October 25, 2014 ("Plan") on December 5, 2014. The Debtors are below-median earners with an applicable commitment period of 36 months. The confirmed Plan provides in Section XII.A that following confirmation the Debtors will file an adversary proceeding or motion to avoid the lien of Guaranty Bank. (Plan, ECF No. 15). Consistent with this District's form plan, the property at issue in the motion (i.e., the Debtors' residence) revested in the Debtors. (Plan at Sec. VIII, ECF No. 15). The Plan further indicates that if the lien creditor has filed a secured claim and the lien is avoided, the claim will be treated as an allowed unsecured claim and that entry of the Order Confirming the Plan is not res judicata with respect to this lien.[1] (Id. at Sec. XII.A). Unsecured creditors were estimated to receive no payments under the Plan. (Id. at Sec. IV.E.2). Guaranty Bank received notice of the Plan and the confirmation hearing but did not file an objection to the Plan.

The Debtors' schedules reflect that the real property securing Guaranty Bank's lien, listed on Schedule A as the Debtors' residence located at 13915 NE 83rd Street, Vancouver, WA ("Residence"), had a value of $180,865 as of the petition date. (Schedule A, ECF No. 1). At the time of the petition, the Residence was encumbered by a deed of trust senior to Guaranty Bank in the amount of $208,438.50. (Claim 24). Guaranty Bank timely filed a proof of claim asserting that as of the petition date it was owed $49,324.61. (Claim 15). Guaranty Bank did not fill out box 4 of the proof of claim form to indicate the amount of its secured claim, if any.

On January 28, 2017, the Debtors filed the present motion seeking to strip the second position deed of trust of Guaranty Bank on their Residence. In the motion, Debtors allege that

---

[1] The confirmation of a plan is ordinarily res judicata as to those issues that were raised, or that could have been raised, during the confirmation process. However, to bind a secured creditor to the plan's collateral valuation would require notice pursuant to Federal Rules of Bankruptcy Procedure 3012 and 9014. In re Pereira, 394 B.R. 501, 504-05 (Bankr. S.D. Cal. 2008).

Guaranty Bank is wholly unsecured and, therefore, is not entitled to the protections of the anti-modification provisions for holders of secured claims secured only by a security interest in a principal residence as set forth in 11 U.S.C §1322(b)(2).[2] See Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220, 1226 (9th Cir. 2002). Guaranty Bank responded to the motion, arguing that: (i) the Debtors are unable to strip the lien because such relief would discharge a non-debtor in violation of Section 524(e); and (ii) equity exists to secure the creditor's lien based on the current market value of the Residence and the lien cannot be modified under § 1322(b)(2). (Resp., ECF No. 35). At the initial hearing on the motion, Guaranty Bank abandoned the § 524(e) argument but continues to argue that the lien is not subject to avoidance because the Residence has equity to support its lien. The Court scheduled an evidentiary hearing on the valuation issue and requested briefing from the parties on the legal issue addressed herein.

## DISCUSSION

The Debtors' motion requires a determination of whether, after deducting the amount of the first mortgage, there is any value in the Debtors' Residence to secure Guaranty Bank's claim. While the parties agree that this is the issue, they disagree on what date the Court should use for determining whether Guaranty Bank is the holder of a "secured claim" as that term is used in §§ 506(a) and 1322(b)(2). The Debtors filed the motion to strip the lien approximately three years after the petition date[3] and advocate for the petition date as the relevant point in time for determining value. Guaranty Bank argues that the date of valuation is sometime closer to the present, although it is unclear what date it actually proposes to use.

---

[2] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[3] Debtors confirm plans and delay in filing the lien strip action at their peril. See In re Chagolla, 544 B.R. 676, 680 (9th Cir. BAP 2016) (finding no prejudice to creditor in lien strip filed after plan completed where confirmed plan provided for treatment of lien as unsecured, trustee actually treated the lien as unsecured, and unsecured creditors did not receive any distribution); See also In re Hegeduis, 525 B.R. 74, 86-87 (Bankr. N.D. Ind. 2015)

ORDER DETERMINING
VALUATION DATE - 3

A. <u>The language of § 506(a) does not specify a date for valuing collateral.</u>

The Bankruptcy Code does not identify the specific date for valuing collateral when determining the status of a secured claim. Instead, the Code provides courts with discretion to value property based on the purpose of the valuation and its proposed use or disposition "in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." §506(a)(1). Valuation will determine whether or not the lien may be stripped and accordingly modified under § 1322(b) because if even one dollar of equity exists to secure the claim, it is protected from modification in a plan under § 1322(b)(2). <u>Nobelman v. Am. Savings Bank</u>, 508 U.S. 324, 329 (1993) (partially secured lien on personal residence is not subject to modification). However, if the lien is wholly unsecured it is subject to modification. <u>Zimmer</u>, 313 F.3d at 1226 (wholly unsecured lien is subject to modification because holder is not holder of a secured claim as that term is used in § 1322(b)(2)). Accordingly, depending on whether the property at issue is appreciating or depreciating after the filing of the bankruptcy case, the date of the valuation clearly will affect the outcome of the Debtors' motion.

Despite the importance of the issue to residential lien stripping motions, there is a lack of consensus amongst the bankruptcy and district courts as to the actual date for determining the value of the collateral. It also does not appear that there is federal appellate decision,[4] let

---

(rejecting creditor's due process argument where it did not object to confirmation, the court also stating that "the farther removed from the date of the petition the appraisal is as to its statement of value, the less materiality it may have if the valuation is challenged.").

[4] The Fifth Circuit Court of Appeals reversed the lower court's determination that the confirmation date was the proper date to value a truck and held that the petition date should be used in determining such value in order to protect the secured creditor against the risk of depreciation. <u>Chase Manhattan Bank USA, N.A. v. Stembridge (In re Stembridge)</u>, 394 F.3d 383, 387-88 (5th Cir. 2004). After the <u>Stembridge</u> decision, Congress clarified in § 506(a)(2) that the petition date should be used in calculating the replacement value for personal property in Chapter 7 and Chapter 13, but did not address the valuation date for real property.

alone any binding Ninth Circuit authority, deciding this specific issue in the context of real property lien stripping motions. [5]

Furthermore, bankruptcy courts have utilized various approaches in resolving this issue. Some courts, a seeming majority, have held that the petition date is the correct date for valuation, while a few others have held that the confirmation date is the correct date. *Compare* TD Bank, N.A. v. Landry (In re Landry), 479 B.R. 1, 7 (D. Mass. 2012) (concluding that the petition date is the proper date for valuation) *with* In re Williams, 480 B.R. 813, 817 (Bankr. E.D. Tenn. 2012) (concluding that the confirmation date is the proper date for valuation). Courts utilizing the petition date also vary in deciding whether to make the rule a bright line test applicable in all future cases, or to adopt a flexible approach based on certain equitable factors. *Compare* Hegeduis, 525 B.R. at 84-86 (holding that test is the date of filing of the petition date with adjustments to be made based on weight of evidence) *with* In re Cooper, 11-02804-8-JNC, 2016 WL 3344839, at *5 (Bankr. E.D. N.C. June 8, 2016) (applying a flexible approach requiring courts to consider several equitable factors). See also In re Fuqua, 12-52348, 2015 WL 5678361, at *4 (Bankr. E.D. Mich. June 10, 2015) (creating a rebuttable presumption that the petition date is the proper date of valuation, which the non-moving party can overcome by persuading the court to apply a different date based on equitable factors such as the debtor converting the case multiple times). For the reasons below, the Court determines the date of valuation in this case is the petition date, August 30, 2014.

//
\\

---

[5] As set forth in the Debtors' brief, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") has held that the determination of whether property is a debtor's principal residence is made as of the petition date. In re Benafel, 461 BR 581, 592 (9th Cir. BAP 2011); In re Abdelgadir, 455 B.R. 896, 903 (9th Cir. BAP 2011) (holding that in a Chapter 11 case, the petition date not the confirmation date is the point to determine whether the property in question was the debtor's principal residence). However, as the Court in Abdelgadir noted, "the value of the claim is a distinct issue from the character of the property," and thus, it is clear that the court made no ruling on the proper date of valuation. Id. at 902-03.

### B. The petition date is the most logical point for determining value in the context of a Chapter 13 lien strip motion.

As directed by § 506(a), this Court must look at the purpose of the valuation in connection with the Chapter 13 plan and the proposed use or disposition of the property. In this case, the purpose of valuation under § 1322(b)(2) is to determine the status of the claim held by a junior lien creditor against the Debtors' primary residence to evaluate whether the Plan's treatment of such claim as wholly unsecured is proper. The outcome of the hearing will determine whether the Debtors are able to retain their home free of the junior lien.

For purposes of confirming a plan, the petition date is the critical and logical date for determining the status of claims and generally establishing the respective rights of debtors and creditors, to the extent possible. The petition date is the date for the filing of the plan and schedules, the date for determining the amount of a creditor's claim generally, the date for creating the bankruptcy estate, and the time for fixing the debtor's right to exemptions. In re Guerra, 16-40121-CJP, 2017 WL 1190604, at *4 (Bankr. D. Mass. Mar. 29, 2017) (quoting In re Johnson, 165 B.R. 524, 528 (S.D. Ga. 1994)) (referring to the petition date as a "watershed date of a bankruptcy proceeding"); Hegeduis, 525 B.R. at 86 (petition date is the critical event point around which the consequences of valuation under § 1322(b)(2) revolves). The petition date is also the point for determining other critical confirmation issues, including the value of property to be distributed in the plan on account of claims. Landry, 479 B.R. at 7-8 (noting that it makes sense to value the property first because the status of claims as secured or unsecured must be determined prior to deciding any present value issues for cram down purposes). The information required for this process largely comes from information provided by the debtor.

The debtor is required to disclose significant information **as of the petition date** in the schedules and proposed plan (generally filed with or near the petition date), including the debtor's position on the value of property, the approximate amount of claims together with the proposed treatment of such claims. See § 521(a); Fed. R. Bankr. P. 1007(c). This petition date

information is essential for both the bankruptcy court to determine the feasibility and confirmability of the Chapter 13 plan and for creditors to make informed decisions about whether to object to confirmation or not.

Additionally, in the context of § 1322(b)(2), the valuation of a debtor's residence as of the petition date properly balances the competing goals of providing a fresh start to the debtor (conditioned on the completion of the Chapter 13 plan) versus the creditor's bargained-for rights as the holder of a secured claim protected from modification. Such a valuation permits and incentivizes debtors to generally maintain and where possible improve their residence and to pay their secured lien creditors with the knowledge that such efforts will be for their benefit. This in turn also protects the senior secured residential lienholders, the primary intended beneficiaries of § 1322(b)(2)'s anti-modification provision. Nobleman 508 U.S. at 2112 (Stephens, J., concurring). By comparison, it is highly unlikely that the creditor in this case, a federally charted savings bank, factored future passive appreciation (or depreciation) into its underwriting decision to lend against the Debtors' Residence.

Moreover, other potential dates make little sense for purposes of determining if Guaranty Bank's claim is secured by Debtors' Residence. The confirmation date is inappropriate because the date of valuation would change based on arbitrary factors that have nothing to do with Guaranty Bank's claim. Confirmation of a Chapter 13 plan is routinely delayed while waiting for the filing of priority claims or while the debtor negotiates the treatment of other secured creditors. Since valuation in the lien strip context also relies on the balance of any claims held by senior secured creditors, the Court would have to decide whether to ignore any postpetition payments reducing a senior mortgage prior to confirmation, as well as factor in accrued interest and other fees and costs. It strikes the Court as odd that Congress would limit the claim modification rights of similarly situated consumer Chapter 13 debtors based on something so arbitrary as the date each debtor is able to have the confirmation hearing. In theory, each time

ORDER DETERMINING
VALUATION DATE - 7

the confirmation date changed the debtor and creditor would also need to obtain new valuation evidence.

A date after confirmation, as advocated by Guaranty Bank, is also unworkable. The Debtors' very ability to confirm their Plan stripping Guaranty Bank's lien depended on whether that lien was protected from modification by § 1322(b) on the petition date. See Benafel, 461 B.R. at 591. As noted above, this determination logically must precede confirmation of the plan and application of the Code's cram down provisions. In construing a similar anti-modification provision in § 1123(b)(5), the Ninth Circuit BAP noted that "the determinative date for whether a claim is secured by a debtor's principal residence is, like all claims, fixed at the petition date." Abdelgadir, 455 B.R. at 902. On the petition date, Guaranty Bank's right to prevent modification of its claim depended on two factors: (1) whether the property had equity to support the lien, and (2) whether the claim was secured solely by the Debtors' principal residence. § 1322(b)(2). It follows that the valuation necessary to ascertain the treatment of a claim as secured or unsecured must look to a date prior to actual confirmation of the plan as well.

C. The timing of the motion alone does not result in prejudice to the creditor.

Notwithstanding the realities of choosing an alternative date, Guaranty Bank argues that fixing the time for valuation as of the petition date is "too inflexible to adapt to various circumstances the Court may encounter in the course of lien strip requests." (Resp. 2:9-10, ECF No. 47). To support this assertion, Guaranty Bank cites Aubain and Wood, two cases from outside the Ninth Circuit. In re Aubain, 296 B.R. 624 (Bankr. E.D.N.Y 2003); In re Wood, 190 B.R. 788 (Bankr. M.D. Pa. 1996). Faced with application of the Chapter 11 anti-modification clause, the court in Wood determined that the language in § 506(a)(1), requiring a determination of value "in light of the purpose of the valuation" prevented application of any one date for purposes of all § 506 valuations. Wood, 190 B.R. at 795. After concluding that no delay in adjudication resulted in a windfall to either side, the court determined the value of the property

ORDER DETERMINING
VALUATION DATE - 8

as of the petition date. Id. at 796. Similarly, the Aubain court weighed the equities of a lien strip adversary filed in the fifth year of a Chapter 13 plan to conclude that the delay caused no prejudice to the creditor and that the creditor's claim was an unsecured claim based on the value on the petition date. Aubain, 296 B.R. at 638.

Both Wood and Aubain recognize the fundamental principle that because § 506(a) covers a variety of valuations, a single date for all purposes is inappropriate. As an example, while the date for valuing collateral for a § 722 redemption is the petition date, the date for valuing collateral in a Chapter 11 dirt-for-debt exchange is the date the property is actually surrendered. In re Morales, 387 B.R. 36, 71 (Bankr. C.D. Cal. 2008) (value in redemption determined on petition date); In re Bate Land & Timber, LLC, 523 B.R. 483, 497 (Bankr. E.D. N.C. 2015) (indubitable equivalent determined at date of surrender). Recognition of the multiple valuation roles of § 506(a) does not conflict with the Court's analysis in this case. However, even if the Court were to agree with Guaranty Bank's broad reading of the flexible approach to valuation, the creditor has presented no basis for deviating from the petition date in this particular case.

Debtors filed the first Chapter 13 plan on August 30, 2014. This plan did not provide for any payments to Guaranty Bank, instead proposing to strip the lien and treat Guaranty Bank's claim as unsecured. (Plan dated Aug. 28, 2014 at XII.A, ECF No. 7). The Debtors filed an amended plan on October 28, 2014, still providing for the same treatment of Guaranty Bank and promising no distribution to unsecured claims. (Plan dated Oct. 25, 2014, ECF No. 15). The Debtors provided notice of the plan provisions to Guaranty Bank at several addresses, including the address indicated by Guaranty Bank in its proof of claim. (Proof of Service, ECF No. 15). At no time did Guaranty Bank object to either plan, and the Court confirmed the Plan on December 5, 2014, without deciding the valuation issue.

Guaranty Bank argues that valuing its claim as of the petition date would give the Debtors a "windfall as a result of their delay . . ." since the property has now appreciated in value such that equity may exist to secure the lien. (Resp. 3:12-15, ECF No. 47). The Court does not agree that the timing of this motion creates an equitable exception to using the petition date for valuation in this case.[6] First, the argument of a windfall cuts both ways, and the parties' position will change depending on whether property is appreciating or depreciating based on local market forces. For example, if this Court were to adopt Guaranty Bank's approach generally, nothing would prevent a debtor from filing an adversary to strip a creditor's lien post-confirmation if the market declined. Such arbitrary factors outside of the parties' control should not drive fundamental decisions concerning the treatment of claims and property of the debtor essential to confirmation of a Chapter 13 plan. This is a result Congress likely did not intend when it granted flexibility to bankruptcy courts in their valuation decisions in various contexts.

To the extent Guaranty Bank is arguing prejudice purely as a result of the delay, the Court also rejects this argument. Neither § 506(a) nor Rule 3012 contains a time limit for filing a valuation motion. In re Chagolla, 544 B.R. 676, 680 (9th Cir. BAP 2016) (finding no prejudice to creditor as a result of a § 506 lien avoidance motion filed after the Chapter 13 case was completed and closed). In Chagolla, the creditor received notice of the treatment of its lien in a confirmed plan, the debtor made payments under the plan, and the trustee treated the claim as unsecured. Chagolla, 544 B.R. at 678-79. As the plan did not result in any distribution to unsecured creditors, the panel noted that "there is nothing in the record to indicate that [creditor] has been prejudiced in any way by [debtor's] delay in avoiding [its] lien." Id. at 681-82. Guaranty Bank admits that "debtors made no provision for unsecured creditors and there are no funds from the plan that will be paid to unsecured creditors." (Resp. 3:17-18, ECF No. 47). Guaranty

---

[6] No evidence of prejudice of the type as described in Chagolla (e.g., missed payments) has been asserted or appears on the record before this Court. The Court will await the evidentiary hearing to determine what weight to provide to each party's evidence.

Bank could have objected to the Plan and forced a valuation at the time of confirmation but it did not. This delay in filing the motion alone is not a basis for finding prejudice sufficient to change the valuation date from the petition date.

Finally, to the extent Guaranty Bank is concerned with prejudice from an evidentiary standpoint, it has identified no facts to support such a conclusion in this case. Frequently, the only evidence presented in these cases is some form of comparative market analysis. These reports estimate value based on publicly available reports of sale. This is evidence that still exists years after the petition date. See Hegeduis, 525 B.R. at 87 n.8 (finding no prejudice because it is possible to derive a historical value from historical data). A difficulty in obtaining evidence is usually a matter for discovery and pre-trial practice, and, where appropriate, evidentiary rulings based on the weight of evidence, not a basis for changing the date of valuation.

## CONCLUSION

The Court holds that the proper date for valuation in this case for purposes of the lien strip motion is the petition date. The parties should prepare accordingly for the future evidentiary hearing on the value of the property at issue.

/ / / End of Order / / /

ORDER DETERMINING
VALUATION DATE - 11